HANS LAURITZEN, Respondent, v. SCOTT McGREGOR et al. FIRST INTERNATIONAL BANK OF MINOT, NORTH DAKOTA, a Corporation, Appellant.

(228 N. W. 236.)

Opinion filed Dec. 10, 1929. Rehearing denied January 6, 1930.

*Paul Campbell,* for appellant.
*Jacobsen & Murray,* and *F. M. Jackson,* for respondent.

CHRISTIANSON, J. The plaintiff brought this action to recover upon a written guaranty of the defendant that it would honor and pay certain checks issued by the McGregor Produce Company of Minot. The action was tried to a jury and resulted in a verdict in favor of the plaintiff. Defendant moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and defendant appeals from the order denying such motion. The material and controlling facts are substantially as follows: At the times involved in this controversy Scott McGregor and C. Hamilton were engaged in the business of buying poultry under the name of McGregor Produce Company. The principal place of business of the copartnership was at Minot, North Dakota, where the defendant bank is located. In the fall of 1925 the McGregor Produce Company sent its representative, one Spiese, to Adams county, for the purpose of purchasing poultry. Spiese engaged one Barry, a resident of the city of Hettinger in Adams county (who was engaged in the produce business at that point) to assist him (Spiese) in purchasing poultry. Before any purchases were made Spiese and Barry determined that some assurance or guarantee ought to be obtained that the checks given in purchase of poultry be paid. Thereupon Spiese called his employers and, also, the defendant bank, on the long distance telephone. Thereafter through the activity of Spiese and Barry the following telegram was sent to the defendant bank:

"Hettinger, N. D. Oct. 27–25. '

"First Intl. Bank, Minot, No. Dak.

"Will you honor check issued by McGregor Prod. Co. by G. G. Spiese in payment of poultry. Wire answer.

"First National Bank."

To this telegram the defendant bank sent, and the First National Bank of Hettinger received, the following reply:

"Minot, N. D. Oct. 27–25.

"First Natl. Bank, Hettinger, No. Dak.

"We will honor check signed McGregor Prod. Co. by G. G. Spiese up to Two Thousand Dollars issued for live poultry.

"First Intl. Bank."

Thereafter, Spiese, assisted by Barry, purchased a sufficient quantity of poultry to make up one carload shipment. After this shipment had been made Spiese decided to purchase poultry for one or more carload shipments. Further telephone communications were had and following such communications on November 4th, 1925, the following telegram was sent to, and received by, the defendant bank:

"Hettinger, No. Dak., Nov. 4, 1925.

"First Intl. Bank, Minot, No. Dak.

"Will you honor checks in payment another car poultry issued by McGregor Poultry Co. Wire amount you will honor.

"First Natl. Bank."

To this telegram the defendant bank sent, and the First National Bank of Hettinger received, the following reply:

"Minot, No. Dak., Nov. 4, 1925.

"First Natl. Bank, Hettinger, No. Dak.

"We will honor checks McGregor Produce Co. to Two Thousand Dollars on present car.

"First Intl. Bank."

The great question in the case is: What obligations were created on the part of the defendant bank as a result of the telegrams which it sent to the First National Bank of Hettinger? It is the contention of the plaintiff that these telegrams constituted a general letter of credit or a general guarantee by the defendant bank and that consequently any person who, with knowledge of such guarantee, accepted checks given in payment of poultry signed by McGregor Produce Company by Spiese, is entitled to recover from the defendant. It is the contention of the defendant bank, on the other hand, that these telegrams

did not create a general guarantee but created merely a special guarantee, operative only between the defendant bank and the First National Bank of Hettinger. All checks issued in payment of the first car of poultry were paid. So far as the second shipment of poultry is concerned, the undisputed evidence also shows that every check that was drawn by the McGregor Produce Company and signed by Spiese, cashed or negotiated through the First National Bank of Hettinger was paid by the defendant bank. The evidence further shows that all checks which were presented to the defendant bank prior to November 14, 1925, were paid. However, a number of checks, aggregating some $899.33, given in payment of poultry included in the second shipment and issued subsequent to the telegram of November 4, 1925, cashed by the payees therein at banks other than the First National Bank of Hettinger were not paid. The plaintiff Lauritzen is the holder of such a check. The holders of other checks given under similar circumstances, assigned them to him and he brought this action upon the checks which were received by him in payment of poultry as well as upon the other checks assigned to him.

Lauritzen testified that at the time he sold his poultry either Barry or Spiese told him that the checks which they gave in payment were "guaranteed by a bank in Minot, North Dakota, and were good" right there; that they said to him: "You can cash it (the check) anywhere in town or in any bank in town." He further testified that they did not mention the first National Bank of Hettinger; that he did not see any of the telegrams that had passed between the defendant bank and the First National Bank of Hettinger and that he first heard of such telegrams after the defendant bank had refused to pay his checks, which checks he had cashed at a bank other than the First National Bank of Hettinger.

Barry testified that the president of the First National Bank of Hettinger showed the telegrams to him (Barry) and that he also saw the telegrams at the depot. He further testified that he told the various parties from whom he and Spiese purchased poultry that the checks were guaranteed by a bank in Minot; that the First International Bank of Minot had guaranteed the checks; that the guaranty had been sent to the First National Bank of Hettinger; that they could go to any bank

and cash the checks but that the guarantee was at the First National Bank of Hettinger.

Lauritzen was the only person who had received a check in payment of poultry that testified as regards the statements made at the time the poultry was sold. None of the payees in the other checks testified. The only evidence as to what representations were made to the recipients of such checks is the testimony of Barry. There is no evidence and no claim that a single person, to whom any of the checks in controversy were given, went to the First National Bank of Hettinger to see the guarantee or that they had any evidence of its existence other than the statements of Barry and Spiese.

We are all agreed that the evidence in this case, construed in the light most favorable to the plaintiff, does not establish any cause of action against the defendant. Obviously, plaintiff has no right of action unless there was a contract entered into by the defendant bank for the benefit of the plaintiff and his assignors. And it seems entirely clear to us that the evidence adduced in this case not only fails to establish any such contract but further shows that no such contract was made. Whatever promises the defendant made must be found in the telegrams which it sent. These telegrams were sent in response to an inquiry from the First National Bank of Hettinger and were addressed specifically to the latter bank. The arrangement effected, and agreement made, as a result of these telegrams were clearly intended to operate only between the two parties whose names were signed to the telegrams. If it had been the intention of the defendant bank to issue a general letter of credit to McGregor Produce Company or a general guarantee of checks drawn by that company, such letter would hardly have been addressed specifically to the First National Bank of Hettinger. But, the telegrams were so addressed, and the promise to honor checks was given specifically to the First National Bank of Hettinger and the latter bank was clearly entitled to rely upon the promises of the defendant that it would honor any checks of the kind described in the telegrams that might be presented by the latter bank, up to the amounts stated in the telegrams. If the telegrams were intended (as plaintiff contends) to operate in favor of any and all persons who might accept checks of the McGregor Produce Company, signed by Spiese, given in

payment of live poultry, then it is difficult to understand how the First National Bank of Hettinger could have cashed any checks on the strength of the telegrams with any assurance that the checks so cashed were protected by the guaranty. Suppose that the telegrams were intended to operate as a general letter of credit or a general guarantee in favor of any person receiving a check issued by the McGregor Produce Company for live poultry no matter where such check was cashed. What would have been the situation of the First National Bank of Hettinger as regards the cashing of such checks? Obviously, it would have had no means of knowing how many checks had been given and cashed elsewhere. Each telegram specified a limit of $2,000. If the telegrams established a mere general guaranty then the First National Bank of Hettinger stood on precisely the same footing as any other person in cashing checks. If the checks it accepted and cashed happened to be among the first $2,000 presented to the defendant bank for payment it would have been protected by the guarantee, otherwise not. Any such construction is clearly contrary to the tenor and effect of the telegrams. The only reasonable interpretation to be placed upon each of these telegrams is that the First National Bank of Hettinger had the promise of the defendant bank that it would honor any and all checks that the First National Bank of Hettinger might present to the defendant bank where the checks had been issued by the McGregor Produce Company in payment of live poultry and did not exceed in the aggregate the sum of $2,000.

Upon the oral argument it was suggested, and in a supplementary brief respondent urges, that in any event plaintiff has established a right to recover under § 7020, Comp. Laws 1913 which provides:

"An unconditional promise in writing to accept a bill before it is drawn is deemed an actual acceptance in favor of every person who, upon the faith thereof, receives the bill for value."

But appellant contends that this section is not applicable to checks; and that, in any event, it must be construed together with the preceding section (Comp. Laws 1913, § 7019), which provides:

"Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor, except in favor of a person to whom

it is shown and who, on the faith thereof, receives the bill for value." And that inasmuch as the evidence in this case shows affirmatively that the telegrams were not shown either to the plaintiff, or to any of his assignors, that no liability exists on the part of plaintiff.

We find it unnecessary to determine the merits of these respective contentions, for obviously an offer or promise to accept which is extended only to one specific person, becomes operative only if accepted by him. An offer, or promise, to accept restricted to a certain individual clearly does not become operative in favor of some person other than the one to whom the offer or promise was given even though such other person should attempt to accept it. Inasmuch as the promise in this case was extended to the First National Bank of Hettinger, and to it alone, it would not operate to create any contractual relations between the defendant bank and some other person to whom no promise was extended, even though such other person sought to accept it.

It follows from what has been said that the judgment and order appealed from must be, and they are, reversed; and the district court is directed to enter judgment in favor of the defendant for a dismissal of the action, notwithstanding the verdict.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.